**Ritchie A. HARRIS, Plaintiff-Appellant,**

**v.**

**MANUFACTURERS NATIONAL BANK OF DETROIT, a National Banking Association, Defendant-Appellee.**

**No. 71–1788.**

United States Court of Appeals, Sixth Circuit.

March 30, 1972.

Harry D. Hirsch, Jr., Detroit, Mich., for plaintiff-appellant.

Jerry Michael Ellis, Detroit, Mich., for defendant-appellee.

Before WEICK and CELEBREZZE, Circuit Judges, and O'SULLIVAN, Senior Circuit Judge.

CELEBREZZE, Circuit Judge.

This is an action in which Plaintiff-Appellant Harris seeks an injunction against the Defendant-Appellee Bank's execution of a state court judgment on an unsecured note signed jointly by Harris and his wife. This appeal is taken from the District Court's grant of Defendant-Appellee's motion for summary judgment. For the reasons set forth below, we reverse the judgment of the District Court.

On September 12, 1969, Harris and his wife obtained a business loan from Defendant-Appellee, for which they jointly signed an unsecured promissory note in the amount of $5,599.68, payable in monthly installments. Default occurred in the installment due May 15, 1970, and under the terms of the note, the entire note became due and payable upon that default.

On or about July 1, 1970, Harris filed a petition in bankruptcy in the United States District Court for the Eastern District of Michigan. He received a discharge in bankruptcy dated November 2, 1970.

On or about August 28, 1970, Defendant-Appellee, with notice of Harris' petition in bankruptcy, filed suit in the Common Pleas Court for the City of Detroit, seeking a joint judgment against Harris and his wife for the unpaid amount of the promissory note. This suit was tried after Harris' November 2, 1970, discharge in bankruptcy, and Harris raised this discharge as a defense to the Bank's suit. On or about March 24, 1971, the Common Pleas Court entered a decision in which it ruled that under Michigan law the Bank was entitled to a joint judgment against Harris and his wife, notwithstanding Harris' discharge in bankruptcy.

On or about March 11, 1971, Harris brought the present action in the District Court, seeking an injunction against the Bank's then pending suit in the Detroit Common Pleas Court and against any attempts by the Bank to collect the debt. Upon stipulated facts, each party moved for summary judgment. In a decision rendered June 11, 1971, the District Court ruled that the law of the State of Michigan controlled the question of whether Harris' discharge in bankruptcy barred the execution of the joint judgment against Harris and his wife. Finding that Michigan law would permit such execution, the District Court granted the Bank's motion for summary judgment on July 22, 1972.

▇ Initially, it should be noted that the District Court, having adjudicated Harris' petition in bankruptcy, properly held that it had jurisdiction over the present action as "a supplemental and ancillary bill in equity, in aid of and to effectuate the adjudication and order made by the same [bankruptcy] court." Local Loan Co. v. Hunt, 292 U.S. 234, 239, 54 S.Ct. 695, 697, 78 L.Ed. 1230 (1934). Because Harris appeared in the state court proceeding and pleaded the defense of discharge in bankruptcy, the present case is distinguishable from this Court's decision in Rouhib v. Michigan Bank, 345 F.2d 782 (6th Cir. 1965).

With respect to the District Court's choice of law, there is no dispute that

under Michigan law the Bank's joint judgment against Harris and his wife can be executed, notwithstanding Harris' discharge in bankruptcy. M.S.A. § 26.182, M.C.L.A. § 557.52, vests in married women the power and capacity to bind themselves to joint liability with their husbands on written instruments. M.S.A. § 26.183, M.C.L.A. § 557.53, provides that a joint judgment obtained against a husband and wife shall be satisfied from any real estate held by them as tenants by the entirety and from any other property held by them jointly with the right of survivorship. Although these statutes do not mention the effect of a husband's or wife's discharge in bankruptcy, the Supreme Court of Michigan has expressly ruled that a joint judgment obtained against a husband and wife pursuant to these statutes is unaffected by the husband's discharge in bankruptcy:

> "The purpose of [M.S.A. §§ 26.181–184] is apparent. Prior to its enactment, a husband and wife whose only property interests were held by them by the entireties had much difficulty in obtaining credit. At common law, neither of them could deal with the estate so held apart from the other. Neither had any interest which could be subjected by creditors so as to affect the rights of the survivor. Under this statute, a written obligation, executed by both of them, may, after recovery of a joint judgment, entered pursuant thereto, be satisfied out of any property held by them by entireties. *The statute will be of no benefit to a creditor relying on it as a means of enforcing a joint obligation so created if the husband, by securing a discharge in bankruptcy, may deprive him of his right to a joint judgment against them both.*" Edwards & Chamberlin Hardware Co. v. Pethick, 250 Mich. 315, 319, 230 N.W. 186, 187 (emphasis added). *See also* Kolakowski v. Cyman, 285 Mich. 585, 281 N.W. 332 (1938).

The only question before this Court, therefore, is whether the District Court erred in applying Michigan law. In Fetter v. United States, 269 F.2d 467 (6th Cir. 1959), this Court was faced with facts substantially the same as those of the present case and similarly involving the Michigan law described above. Fetter and his wife had jointly signed unsecured FHA notes for the value of work done on property owned by them as tenants by the entirety. The United States became the owner of these notes by way of assignment and sued to collect the balance due thereunder. Prior to the filing of these suits by the United States, Fetter was discharged in bankruptcy, and he raised his discharge as a complete defense to the actions. The District Court entered a joint judgment against Fetter and his wife, noting that although Fetter had been discharged in bankruptcy, his wife's joint liability under the notes—as provided for under the Michigan statutes—was not affected by his discharge. Recognizing the clear requirement of Section 17 of the Bankruptcy Act, 11 U.S.C. § 35, that a discharge shall release the bankrupt from all provable debts (except those specifically stated therein), this Court reversed the District Court and held that the discharge released the husband from all joint and several liability under the notes and, ipso facto, the wife from her joint liability thereunder. In thus ruling that the Fetters' joint obligation under the notes was terminated by the husband's discharge in bankruptcy, this Court fully recognized that the opposite result would be required under Michigan law.

█ In granting Defendant-Appellee's motion for summary judgment, the District Court ruled that this Court's choice of law in *Fetter* was not controlling in the present case, since federal jurisdiction in Fetter was based on 28 U.S.C. § 1345 (suits involving the United States as plaintiff), whereas federal jurisdiction in the present case is based on 28 U.S.C. § 1334 (bankruptcy matters and proceedings). We do not believe this technical distinction between *Fetter* and the present case warrants the Dis-

trict Court's resort to Michigan law. Nothing in the *Fetter* opinion suggests that the overriding policy of Section 17 of the Bankruptcy Act, which was found to be controlling in that case, should be abandoned in the present case simply because the United States is not the plaintiff.

Moreover, we believe the Supreme Court's recent decision in Perez v. Campbell, 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971), thoroughly undercuts the District Court's belief that it was free to apply Michigan law despite the fact that the · *Fetter* decision had found the Michigan law to be in conflict with Section 17 of the Bankruptcy Act. In *Perez,* the Supreme Court struck down as unconstitutional part of an Arizona statute which provided that the driver's license and registration of an uninsured judgment debtor would be suspended until such time as the judgment was satisfied, and such suspension would be unaffected by the judgment debtor's discharge in bankruptcy. Finding this provision to be in direct conflict with Section 17 of the Bankruptcy Act, the court held that it was unconstitutional under the Supremacy Clause.

■ Although *Fetter* and the present case involve a conflict between state case law and the Bankruptcy Act, whereas *Perez* involved a conflicting state statute, the Supreme Court's adherence to the overriding purpose of Section 17 of the Bankruptcy Act in *Perez* fully supports the *Fetter* decision and its applicability to the present case. We believe the Michigan case law at issue here presents a more direct conflict with Section 17 than did the Arizona statute in *Perez.* The Arizona statute provided that a seemingly tangential burden of his indebtedness (*i. e.,* suspension of his driving privileges) could accompany the judgment debtor after his discharge in bankruptcy. In contrast, the decisions of the Supreme Court of Michigan provide that the direct burden of a joint judgment for a joint obligation existing at the time of the husband's discharge

in bankruptcy can be obtained against the husband and wife subsequent to that discharge [Edwards & Chamberlin Hardware Co. v. Pethick, 250 Mich. 315, 230 N.W. 186 (1930)] or, alternatively, that a joint judgment entered against the husband and wife shall be unaffected by the husband's subsequent discharge in bankruptcy [Kolakowski v. Cyman, 285 Mich. 585, 281 N.W. 332 (1938)]. Such a joint judgment constitutes a direct burden on the husband subsequent to his discharge in bankruptcy because under M.S.A. § 26.183 the property held by the husband and wife as tenants by the entirety may be attached in satisfaction of the joint judgment. This immunity from a husband's discharge in bankruptcy, which the Michigan Court has granted to joint judgments against the husband and wife, would seemingly cause less of a conflict with Section 17 in states where spouses own property as tenants in common or joint tenants; in such states, each spouse's interest in the jointly held property is encumberable and transferable, and the interest of the wife alone can therefore be attached under the joint judgment while the interest of the discharged husband remains free from attachment. *See* United States v. Rassmussen, 184 F.Supp. 351 (D.Minn. 1960); Collier on Bankruptcy, Vol. 4A, Para. 70.17, at 190–92 (4th ed. 1971). In states such as Michigan, however, where spouses own jointly held property as tenants by the entirety, each spouse has an undivided interest in the entirety of the property; neither spouse can transfer his interest without the consent of the other, and neither spouse can subject his interest to his individual liabilities during the lifetime of the other. *See* Fetter v. United States, *supra,* 269 F.2d at 469; Phillips v. Krakower, 46 F.2d 764 (4th Cir. 1931); Collier, *supra,* at 180. Therefore, under the Michigan decisions, the entirety of the property held by the husband and wife is subject to satisfaction of the joint judgment, notwithstanding the fact that the hus-

band's provable debts have been discharged in bankruptcy.[1]

The net effect under the Michigan rule is that only the husband's several liability, and not his joint liability, under the joint obligation constitutes a "provable debt" from which he is released under Section 17.[2] As noted by this Court in *Fetter,* however, Subsection 63(a) (1) of the Bankruptcy Act, 11 U.S.C. § 103(a) (1), provides that provable debts shall include "a fixed liability, as evidenced by a judgment or an instrument in writing, absolutely owing at the time of the filing of the petition . . . ." Nothing in Section 17 or Section 63 permits the exclusion of the husband's joint liability from provable debts under the former simply because the property attachable under the joint obligation is held by the codebtor spouses as tenants by the entirety. Rather, the Michigan case law at issue here directly conflicts with Section 17 and with the overriding purpose of the Bankruptcy Act—that the bankrupt shall have "a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of pre-existing debt." Perez v. Campbell, *supra,* 402 U.S. at 648, 91 S.Ct. at 1710, quoting Local Loan Co. v. Hunt, 292 U.S. 234, 244, 54 S.Ct. 695, 78 L.Ed. 1230 (1934).

We find no merit in Defendant-Appellee's argument that, under Michigan law a suit seeking a joint judgment against a husband and wife is recognized as a *quasi-in-rem* action directed at the property held by the entirety, and that such a judgment should thus be unaffected by the husband's personal discharge in bankruptcy. The essence of this argument is that because the property held by the husband and wife as tenants by the entirety does not pass to the trustee in bankruptcy when the husband is adjudicated bankrupt, joint judgments which may be satisfied from such property should not be barred by the husband's discharge. *See* Edwards & Chamberlin Hardware Co. v. Pethick, *supra,* 250 Mich. at 320–321, 230 N.W. at 187–188. In *Fetter,* this Court expressly acknowledged this fact that property held by the entirety does not pass to the trustee in bankruptcy, yet it nonetheless ruled that the husband's discharge in bankruptcy precluded a joint judgment against the husband and wife which could be satisfied from such property. In Phillips v. Krakower, *supra,* the Court of Appeals for the Fourth Circuit similarly acknowledged that a joint judgment against the husband and wife would be barred by the husband's discharge in bankruptcy, notwithstanding the fact that such a joint judgment attached to property held by the entire-

---

1. Section 16 of the Bankruptcy Act, 11 U.S.C. § 34, provides that the liability of a codebtor shall not be altered by the discharge of the bankrupt. This Section appears to preserve the joint liability of a wife after a husband's discharge, thus permitting a joint judgment against the spouses, when the husband and wife hold jointly owned property as tenants in common or joint tenants. *See* United States v. Rasmussen, 184 F.Supp. 351 (D.Minn. 1960); Collier, *supra,* Vol. 1A, Para. 16.08, at 1536–37. Application of Section 16 to cases where the spouses hold property as tenants by the entirety, however, would in effect result in a preservation of the entire joint liability of both the husband and wife since the discharged husband's interest in the property attachable thereunder cannot be isolated and re-

moved from a joint judgment against the spouses. *See* Phillips v. Krakower, *supra*; Collier, *supra.* The same problem in applying Section 16 arises where the spouses hold community property. *See* Gibbons v. Dexter Horton Trust & Savings Bank, 225 F. 424 (D.Wash.1915); Collier, *supra,* at 1536 n. 4.

2. While acknowledging the requirement of Section 17 that a discharge shall release the bankrupt from all provable debts, the Supreme Court of Michigan has interpreted this requirement to be a bar only to a "personal" judgment against the husband. Edwards & Chamberlin Hardware Co. v. Pethick, *supra,* 250 Mich. at 317–318, 230 N.W. at 186–187; Kolakowski v. Cyman, *supra,* 285 Mich. at 590, 281 N.W. at 335.

ty, which could not pass to the trustee in bankruptcy. 46 F.2d at 765. We similarly conclude that the fact that the property held by the entirety does not pass to the trustee in bankruptcy in no way precludes our determination that a joint judgment which could attach to that property is barred by the husband's discharge in bankruptcy.

It is significant to note that when the 1938 Bankruptcy Act was enacted, Congress was fully aware of the unique problems which estates by the entirety present under federal bankruptcy law. It was argued before the House that the ability of the bankrupt to obtain a discharge of all provable debts without having to surrender certain nonassignable assets—including property held by the entirety—to the trustee in bankruptcy constituted a virtual fraud under the earlier Act. *See* Collier, *supra,* Vol. 4A, Para. 70.03, at 37. In response to this criticism, Congress inserted, *inter alia,* the third paragraph of Section 70(a) in the 1938 Act, 11 U.S.C. § 110(a):

> "All property, wherever located, except insofar as it is property which is held to be exempt, in which the bankrupt has at the date of bankruptcy an estate or interest by the entirety and which within six months after bankruptcy becomes transferable in whole or in part solely by the bankrupt, shall, to the extent it becomes so transferable, vest in the trustee and his successor or successors, if any, upon his or their appointment and qualification, as of the date of bankruptcy."

With Congress having chosen to provide only this limited form of relief from the problems which estates by the entirety create under the Bankruptcy Act, we do not believe that federal courts are empowered to adopt broader remedies promulgated by state courts, particularly when those state remedies directly conflict with the specific requirement of Section 17 of the Bankruptcy Act.

For the reasons set forth above, we conclude that the District Court erred in applying Michigan law contrary to this Court's decision in Fetter v. United States, *supra,* and in thus failing to grant Harris an injunction against Defendant-Appellee's execution of the joint judgment entered by the Common Pleas Court of Detroit. The judgment of the District Court is therefore reversed with instructions to grant the injunction.