In re Wilson L. **TRICKETT**, Debtor.

**MICHIGAN NATIONAL BANK—Michiana,**
**Plaintiff,**

v.

**Joseph A. CHRYSTLER, Trustee, and Wilson L. Trickett and Verda Trickett, Defendants.**

**Bankruptcy No. NK 80–02333.**
**Adv. No. 80–0818.**

United States Bankruptcy Court,
W. D. Michigan.

Sept. 10, 1981.

**86**

Ryan, McQuillan, Vander Ploeg & Fette, Paul J. Kelley, St. Joseph, Mich., for plaintiff.

Richard C. Walsh, Kalamazoo, for defendants.

### TENANTS BY THE ENTIRETIES— JOINT CLAIMS—DISCHARGE

DAVID E. NIMS, Jr., Bankruptcy Judge.

Michigan National Bank—Michiana, (Bank) a National Banking Association, authorized to conduct business in Michigan with its principal office in Cassopolis, filed its complaint against Joseph A. Chrystler, the trustee in this case, Wilson L. Trickett (Trickett) of Berrien Springs, the debtor, and his wife Verda Trickett (Verda) for a stay of discharge and relief from stay so as to enable it to proceed in a state court against Trickett and Verda for a joint judgment so as to reach real estate held by them as tenants by the entireties. Bank's claim is on an unsecured promisory note executed and delivered to the Bank by Trickett and Verda on April 10, 1980, in the principal sum of $40,000. The note was due July 10, 1980. Trickett and Verda had also guaranteed a debt due by the Berrien Springs Cooperative, Inc., to Bank for $65,000 on June 21, 1977.

Trickett filed a voluntary petition on August 4, 1980, claiming as exempt all property owned with Verda as tenants by the entireties. These properties have a scheduled value of $3,696,164.50. Liens are scheduled at $1,559,971.36 leaving an equity of $2,136,193.14. It is out of this property that the Bank desires to satisfy it's claim. Debtor's total assets are scheduled at $4,037,300.38 of which $3,701,314.50 is claimed to be exempt. Total debts are scheduled at $2,400,375.55.

Michigan is one of some fifteen states that still retains the common law estate of tenancy by the entirety. At common law, the individual creditors of neither the husband or wife could reach entireties property by judicial process nor could either spouse transfer any interest in the property. *Albinak v. Kuhn*, 149 F.2d 108 (6th Cir. 1945);

*Cole v. Cardoza,* 441 F.2d 1337, 1343 (6th Cir. 1971); *Farrell v. Paulus,* 309 Mich. 441, 15 N.W.2d 700 (1944); *American State Trust Co. of Detroit v. Rosenthal,* 255 Mich. 157, 237 N.W. 534 (1931). For a full discussion see Bienenfeld, "Creditors v. Tenancies By The Entirety," 1 Wayne L.Rev. 105 (1955).

In 1917 Michigan enacted a statute which gave some relief to joint creditors. That statute as amended reads in part as follows:

"Hereafter the real estate of the husband and wife owned by them as tenants by entirety * * * shall be subject to writ of garnishment and all other process provided by law, in satisfaction of any judgment which has been recovered against persons who were at the time of the execution of such written instrument husband and wife jointly or the survivor upon any instrument signed by both. Mich.Comp.Laws Sec. 557.53 [Mich.Stat. Ann. Sec. 26.183 (Callaghan, 1974)]"

A year later, the Michigan Supreme Court went one step further and extended this right to reach entireties property to joint judgment holders. *Sanford v. Bertrau,* 204 Mich. 244, 169 N.W. 880 (1918).

Professor Bienenfeld in "Creditors v. Tenancies By The Entirety" 1 Wayne L.Rev. 105, 112 states:

"To sum up the results of the statutes and the decisions of the Michigan Court, in order to levy upon entireties property the claimant must obtain a joint judgment against husband and wife. To obtain such a judgment he must prove either:

(1) A special consideration running to the wife's separate estate; or

(2) A written instrument signed jointly by husband and wife"

Under the Bankruptcy Act of 1898, there was a substantial body of law concerning entireties property and joint debts where one spouse obtained a discharge in bankruptcy. The Michigan Courts have held that the bankruptcy discharge of one or both spouses under that Act would not affect the rights of joint creditors. *Kolakowski v. Cyman,* 285 Mich. 585, 281 N.W. 332 (1938); *Wesorick v. Winans,* 277 Mich. 589, 269 N.W. 609 (1936); *McPherson v. Gregory,* 271 Mich. 580, 260 N.W. 767 (1935); *Edwards & Chamberlin Hardware Co. v. Pethick,* 250 Mich. 315, 230 N.W. 186 (1930); *Traverse City State Bank v. Conaway,* 37 Mich.App. 647, 195 N.W.2d 288 (1972). Our neighbor state of Indiana has reached the same result. *First National Bank of Goodland v. Pothuisje,* 42 Am.B.R. (N.S.) 223 (Supr.Ct.Ind., 1940).

The Federal Courts in this circuit have come out differently on this question. In *Fetter v. United States,* 269 F.2d 467 (6th Cir. 1959), the United States became the owner of notes executed by husband and wife. The husband had been discharged in bankruptcy before the suit on the notes. Joint judgment for the United States was reversed because of the discharge.

A similar result was reached in *Harris v. Manufacturers National Bank of Detroit,* 457 F.2d 631 (6th Cir. 1972) *cert. denied* 409 U.S. 885, 93 S.Ct. 118, 34 L.Ed.2d 142 (1972). Harris and his wife obtained a business loan from defendant bank. After defaulting on the joint note, Harris filed his voluntary petition. Before discharge was entered, the bank brought suit in a state court. The case was not tried until after discharge was granted. Harris raised the defense of his discharge in bankruptcy, but the state court granted a joint judgment. Harris filed an application with the United States District Court for an injunction against execution by the bank. The district court held that state law controlled and denied the injunction. On appeal the Court of Appeals reversed with instructions to grant the injunction as prayed for. The court reached several conclusions in arriving at its decision:

1. The court has jurisdiction to consider a supplemental and ancillary bill in equity in aid of and to effectuate the adjudication and order made by the same court. *Local Loan Co. v. Hunt,* 292 U.S. 234, 54 S.Ct. 695, 78 L.Ed. 1230 (1934).

2. Under Michigan law, the bank would prevail.

3. Michigan law does not apply where jurisdiction is based on the bankruptcy power.

4. Michigan law is in direct conflict with the relief afforded the discharged bankrupt under Section 17 of the Act.

5. Under Michigan entireties law, neither spouse can transfer an interest or subject his interest to his individual liabilities.

6. Michigan law conflicts with the overriding purpose of the Bankruptcy Act to grant debtor "a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt."

7. The fact that entireties property does not pass to the trustee does not preclude determination that a joint judgment is barred by the husband's discharge.

8. Since Congress was aware of the impact of tenancy by the entireties as evidenced by the Section 70(a) provision for entireties property vesting within six months of filing, the courts should not enlarge the relief available where Congress did not expressly act.

9. The federal courts cooperated with joint creditors, however, by adopting the old device used in *Lockwood v. Exchange Bank*, 190 U.S. 294, 23 S.Ct. 751, 47 L.Ed. 1061 (1903), whereby the bankruptcy court would stay the granting of a discharge and allow relief from stay in order to allow joint creditors to obtain a joint judgment against the spouses and satisfy their claims out of entireties property. *In re Seats*, 537 F.2d 1176 (4th Cir. 1976); *Davison v. Virginia National Bank*, 493 F.2d 1220 (4th Cir. 1974); *Reid v. Richardson*, 304 F.2d 351 (4th Cir. 1962); *Phillips v. Krakower*, 46 F.2d 764 (4th Cir. 1931); *In re Magee*, 415 F.Supp. 521 (W.D.Mo.1976); *In re Saunders*, 365 F.Supp. 1351 (W.D.Va.1973); *In re Chitwood*, 1 B.R. 415 (Bkrtcy.W.D.Va.1979). This court has taken this approach where, unlike in *Harris*, the discharge has not been granted. *In re Rafferty*, No. NG 78–00147 B1 (W.D.Mich.1978); *In re Houdeshell*, No. HK 77–00291 B4 (W.D.Mich.1977); *In re Black*, 14 C.B.C. 481 (W.D.Mich.1977).

This case was filed after October 1, 1979, and is, therefore, subject to the Bankruptcy Reform Act of 1978. The holdings in *Harris* and *Fetter*, as well as, the need of providing a stay of discharge as relief to joint creditors must be reconsidered in light of the new treatment of property of the estate under the Code. Under the Bankruptcy Act of 1898, title would vest in the trustee only of property of the debtor which "prior to the filing of the petition he could by any means have transferred or which might have been levied on and sold under judicial process against him, or otherwise seized, impounded, or sequestered." Bankruptcy Act of 1898, Sec. 70(a)(5) (repealed 1979). Because property of the debtor held in the entireties cannot be transferred or levied upon by individual creditors, title did not vest in the trustee under the Act.

Under the Bankruptcy Code, 11 U.S.C. § 541(a)(1), the estate of a case "is comprised of all legal or equitable interests of the debtor in property as of the commencement of the case."

"Paragraph (1) has the effect of overruling *Lockwood v. Exchange Bank*, 190 U.S. 294, 23 S.Ct. 751, 47 L.Ed. 1061 (1903), because it includes as property of the estate all property of the debtor, even that needed for a fresh start. After the property comes into the estate, then the debtor is permitted to exempt it under proposed 11 U.S.C. Section 522, and the court will have jurisdiction to determine what property may be exempted and what remains as property of the estate. The broad jurisdictional grant in proposed 28 U.S.C. 1471(b) would have the effect of overruling Lockwood independently of the change made by this provisions." H.R.Rep.No.95–595, 95th Cong., 1st Sess. 368 (1977). S.Rep.No.95–989, 95th Cong., 2d Sess. 82 (1978), U.S.Code Cong. & Admin.News 1978, 5787, 6324.

If there could be any question on whether a debtor has a legal or equitable interest in an estate by the entirety, this is resolved by the fact that 11 U.S.C. Sec. § 363(h), (i) and (j) set forth the procedure for disposal of such property by the trustee. The House Judiciary Committee Report states:

"The bill also changes the rules with respect to marital interests in property.... With respect to other co-ownership interest, such as tenancies by the entireties, joint tenancies, and tenancies in common, the bill does not invalidate the rights, but provides a method by which the estate may realize on the value of the debtors interest in the property while protecting the other rights. The trustee is permitted to realize on the value of the property by being permitted to sell it without obtaining the consent or waiver of rights by the spouse of the debtor or the co-owner, as may be required for a complete sale under applicable State law. The other interest is protected under H.R. 8200 by giving the spouse a right to first refusal at a sale of the property, and by requiring the trustee to pay over to the spouse the value of the spouses interest in the property...." H.Rep.No.95–595 at 177, U.S.Code Cong. & Admin.News 1978, 6137.

Those cases facing the question have all held that entireties property is part of the debtor's estate. A definitive treatment of the relationship of tenancy by the entirety estate and the Bankruptcy Courts under the new code is contained in *In re Ford*, 3 B.R. 559 (Bkrtcy.D.Md.1980), *aff'd*. 638 F.2d 14 (4th Cir. 1981). This case held that the entireties property came into the estate but was allowed as exempt. See also *In re Dawson*, 10 B.R. 680, 7 B.C.D. 603 (Bkrtcy. E.D.Tenn., 1981); *In re Barsotti*, 7 B.R. 205, 6 B.C.D. 1295 (Bkrtcy.W.D.Pa.1980); *In re Lambert*, 10 B.R. 11, 6 B.C.D. 1124 (Bkrtcy.N.D.Ind.1980); *In re Weiss*, 4 B.R. 327 (Bkrtcy.S.D.N.Y.1980); *Matter of Koehler*, 6 B.R. 203 (Bkrtcy.M.D.Fla.1980); *In re Shaw*, 5 B.R. 107 (Bkrtcy.M.D.Tenn. 1980); *In re Thacker*, 5 B.R. 592 (Bkrtcy.W. D.Va.1980). In a proceeding under the 1898 Act, this court indicated that under the 1978 act entireties property would become a part of the estate. *In re Walter*, 8 B.R. 543, 1 C.B.C.2d 460 (Bkrtcy.W.D.Mich. 1980).

Once the entireties property comes into the estate, the debtor has the right to have it determined to be exempt. Under 11 U.S.C. Sec. 522(b)(2), he may, as did Trickett, elect to take those exemptions available under State and Federal law, other than 11 U.S.C. Sec. 522(d). If he so elects, the exemption includes under 11 U.S.C. Sec. 522(b)(2)(B), "any interest in property in which the debtor had, immediately before the commencement of the case, an interest as a tenant by the entirety or joint tenant to the extent that such interest as a tenant by the entirety or joint tenant is exempt from process under applicable nonbankruptcy law."

Generally, questions of exemptions are a matter of federal law. But, 11 U.S.C. Sec. 522(b)(2)(B) refers us to "applicable non bankruptcy law." Since there is no federal non-bankruptcy exemption for property held in the entireties, we must look to state law. As indicated above, under state law, Trickett's interest in property held in the entirety is not subject to the claims of his individual creditors, but the property is subject to process by certain joint creditors. Therefore, there is no exemption of entireties property as to joint creditors under 11 U.S.C. Sec. 522(b)(2)(B).

Trickett claims that joint creditors may not reach the entireties property because it would be necessary for such creditors to obtain a joint judgment against him and his wife and file a levy on such property. At this time a judicial lien would exist which Trickett asserts would be avoidable under 11 U.S.C. Sec. 522(f)(1) since it would impair the exemption to which he was entitled to under Subsection (b). I cannot agree. Liens may be avoided only in property that "is exempt from process under applicable nonbankruptcy law." As to joint claimants, this property is not exempt from process under applicable nonbankruptcy law. Thus, there can be no impairment of the exemption.

Debtor is entitled under the Michigan Constitution to an exemption in his homestead of $3,500.00. Mich.Const. Art. X, Sec. 3.

■ It is, therefore, my conclusion that the entireties property comes into the bank-

ruptcy estate by operation of 11 U.S.C. Sec. 541, and may be claimed as exempt as to joint creditors who, under Michigan law could have obtained a joint judgment and satisfied the judgment out of the entireties property only to the extent of the $3,500 homestead exemption.

Under the old Act it was necessary to follow the somewhat clumsy procedure of granting to those joint creditors who filed complaints relief from stay and a stay of discharge so that action could be taken in the State courts. In my opinion, such an inadequate device is no longer necessary. Under the Bankruptcy Reform Act of 1978, 28 U.S.C. Sec. 1471 drastically changes the jurisdiction of the bankruptcy courts. This section provides in part as follows:

"(a) Except as provided in subsection (b) of this section, the district courts shall have original and exclusive jurisdiction of all cases under title 11.

"(b) Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district court, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11 or arising in or related to cases under title 11.

"(c) The bankruptcy court for the district in which a case under title 11 is commenced shall exercise all of the jurisdiction conferred by this section on the district courts.

" * * * *

"(e) The bankruptcy court in which a case under title 11 is commenced shall have exclusive jurisdiction of all of the property, whereever located, of the debtor, as of the commencement of such case."

■ One of the longtime principles of bankruptcy law is that all creditors of each class shall be treated equally, 11 U.S.C. Sec. 726(b). Thus, there should be orderly administration of debtor's property without a race by creditors for judgments and liens which give priority to the more aggressive creditors. Since the bankruptcy court now has the jurisdiction to protect all joint creditors, it should assume that responsibility in order that justice and equality be served. Therefore, it should no longer be the case that only those joint creditors who apply for a lift of stay be entitled to proceed against entireties property as was the case under the Bankruptcy Act of 1898. Instead, this court will exercise its jurisdiction over the entireties property and administer the entireties property for the equal benefit of all joint creditors.

In *In re Koehler*, 6 B.R. 203 (Bkrtcy.M.D. Fla.1980), the trustee was proceeding against the debtor, his wife and his son for the turnover of property held as tenants by the entirety. On a motion to dismiss, it was claimed that entireties property was not subject to administration or in the alternative that the property was exempt under 11 U.S.C. Sec. 522(b)(2)(B). The motion was dismissed. The court stated at page 206:

"Florida law does, however, recognize the right of joint creditors pursuant to a general lien theory to reach tenancy by the entireties properties. *Stanley v. Powers*, 123 Fla. 359, 166 So. 843 (1936); 12 Fla. Jur.2d Cotenancy and Partition § 18 and cases cited therein.

"While the original complaint failed to allege the existence of joint creditors, a supplement to the complaint now alleges that there are joint creditors of both spouses, who under the applicable local law, could have levied on the properties in question. Therefore, the trustee is entitled to liquidate the Debtor's interest in the properties under § 363(h) in spite of the provisions under § 522(b)(2)(B)."

The usual cases involving disposal of entirety property concern one homestead in which there is a limited equity. In this case, the entireties property consists of many parcels of real estate and, because of the nature of Trickett's operations there may be several joint creditors. The following is a proposed procedure to be followed in administering the entireties property. Suggestions or briefs may be submitted on this.

1. An order will be served on all creditors, ordering those claiming to be entitled

to a joint judgment against the debtor and his wife, under Michigan law, to file a special claim clearly marked as a "joint claim."

2. The debtor, debtor's wife, trustee, any creditor or any other interested party will then have 120 days from the date of the order in which to object to a "joint claim." On the filing of an objection, a trial date will be set.

3. As soon as the court determines the identity of "joint claimants" and the amount of the claims, the court will hold a hearing on the interest of the debtor's spouse in the entireties property. Debtor, debtor's spouse, trustee, each "joint creditor" and any other interested party will be given notice of such hearing and may attend and be heard.

4. The debtor, debtor's spouse and trustee shall have the right to partition the entireties property if practicable subject to 11 U.S.C. Sec. 363(h), (i).

5. If partition is impracticable, the debtors may chose the order in which parcels will be sold. Only parcels which on liquidation will produce sufficient funds to pay expenses of administration for the joint estate and "joint claims" will be sold by the trustee.

6. Before the consumation of a sale of any parcel, debtor's wife may purchase the property at the price at which such sale is to be consumated. 11 U.S.C. Sec. 363(i).

7. Trustee will distribute proceeds from sales as follows:

(a) Lienholders including taxes on the property.

(b) Expenses and cost of sale, not including any compensation of the trustee. 11 U.S.C. Sec. 363(j).

(c) Debtor's spouse, unless waived.

(d) Expenses of administration—only for administration on "joint claims"—to include:

(1) Trustee's fees based on handling of debtors interest only.

(2) Attorney for trustee fees, if necessary.

(3) Appraisers fees, if necessary.

(4) Accountant fees, if necessary.

(5) Realtor fees, if necessary.

(6) Reasonable attorneys fees and costs to Plaintiffs in this proceeding.

(7) Other expenses as necessary.

(e) Joint claims.

(f) Surplus to debtor.

The court must also determine the applicability of the equitable doctrine of marshaling of assets. The rule of marshaling of assets is stated in 53 Am.Jur.2d Marshaling of Assets Sec. 7 pp. 13–14.

"[W]here a creditor has a claim upon two funds, and another has a claim upon one of the funds only, the one having a claim to two funds may be compelled to go against the one to which he has an exclusive right, leaving the other to a creditor who can resort to it alone.

The Supreme Court in *Sowell v. Federal Reserve Bank of Dallas, Texas*, 268 U.S. 449, 45 S.Ct. 528, 69 L.Ed. 1041 (1925) stated as follows:

"The equitable doctrine of marshaling rests upon the principal that a creditor having two funds to satisfy his debt may not, by his application of them to his demands, defeat another creditor, who may resort to only one of the funds."

The case most relevant to our problem of whether marshaling should be applied where the "two funds" are exempt and non-exempt property is *Meyer v. U. S.*, 375 U.S. 233, 84 S.Ct. 318, 11 L.Ed.2d 293 (1963). In *Meyer*, the property in question was the proceeds of a life insurance policy. State law exempted the amount paid in excess of the cash surrender value. The proceeds had been pledged to a bank as security on a loan. There was a junior tax lien on the proceeds as well which was subject to the state exemption. The executrix claimed the government was entitled only to the difference between the surrender value and the amount paid the bank. The government argued that by marshaling the assets it should be able to proceed against the full non-exempt portion, and the bank against the exempt portion which it alone could do as a holder of a pledge of the proceeds. The court's response was that this equitable

doctrine could not be invoked to get around the state exemption. *Holden v. Stratton,* 198 U.S. 202, 213–14, 25 S.Ct. 656, 659–60, 49 L.Ed. 1018 (1905), was cited for the general Congressional policy "both in general legislation and in bankruptcy acts" to recognize and give effect to state exemption laws.

A similar result was reached in *In re Ahlswede,* 516 F.2d 784 (9th Cir. 1975) which involved a spendthrift trust. The trustee of the trust was also a creditor of the debtor on certain advances made from the trust to the debtor. Although other creditors could not execute on the trust property, the trustee could. The court in a single paragraph dismissed any argument that marshaling should be applied and the trustee required to first proceed against the otherwise exempt trust. *Meyer* was said to be virtually on all fours.

 Congress has used the rights of a debtor to entirety property under state law as an exemption. Exemption laws are to be liberally construed in favor of the debtor. While it may seem inequitable that the debtors property be shielded from his creditors in this case because of the extent of the entireties property and the amount of the debt, the next case may well involve the usual debtor with only a limited interest in a homestead. I would, therefore, conclude that under *Meyer* marshaling is inappropriate and that the joint debtors should first proceed to obtain their distribution out of the general estate and then proceed against the entirety estate for balance. As this issue was not covered in the briefs, the parties may file briefs if desired.