In re Alan Wayne RAYNARD and
Karen Elizabeth Raynard,
Debtors.

No. HM 05–90027.

United States Bankruptcy Court,
W.D. Michigan.

July 15, 2005.

David E. Bulson, Sault St. Marie, MI, for Debtors.

Brett N. Rodgers, Grand Rapids, MI, Chapter 13 Trustee.

## OPINION RE: REQUESTED CONFIRMATION OF DEBTORS' AMENDED CHAPTER 13 PLAN

JEFFREY R. HUGHES, Bankruptcy Judge.

Alan and Elizabeth Raynard seek confirmation of their Chapter 13 plan. That plan discriminates between their joint creditors and their individual creditors by offering a 100% dividend to their joint creditors instead of the much smaller dividend offered to their individual creditors. Confirmation of their plan is denied for the reasons stated in this opinion.

## I. *PROCEDURAL BACKGROUND*

The Raynards filed their Chapter 13 petition on January 13, 2005. I first considered confirmation of their plan on March 8, 2005. The hearing has been adjourned twice in order to give the Raynards the opportunity to address my concerns about the proposed treatment of joint creditors under their plan. The Raynards briefed the issue and I heard further argument at the June 7, 2005 hearing. The confirmation hearing was then adjourned again to July 19, 2005.

## II. *FACTUAL BACKGROUND*

The Raynards are dairy farmers. Both their residence and their farm are located on contiguous parcels of real property in Pickford Township, Michigan. The Raynards own both parcels of property as tenants by the entirety.

The Raynards' schedules set the value of their farm at $240,000 and the value of their residence at $130,000. Their schedules also indicate that their farm is subject to a mortgage lien in the amount of $129,715 and that their residence is subject to two other mortgage liens that total $112,874. Consequently, their schedules establish that there is at least $86,285 equity in their farm and at least $4,126 equity in their residence.[1]

The Raynards claim both their farm and their residence as exempt.[2] The Ray-

---

1. The Raynards in fact assert that the equity in their farm is $110,285 and that the equity in their residence is $17,126. However, their calculations do not take into consideration liquidation costs. The $4,126 and $86,285 equity calculations in this opinion assume liquidation expenses equal to 10% of the gross values of these properties.

2. The Raynards' Schedule C actually sets the claimed exemption in the residence at

nards' cite 11 U.S.C. § 522(b)(2)(B)[3] and MICH. COMP. LAWS § 600.6018 as authority for the exemption claimed. The Chapter 13 Trustee filed a timely objection to Debtors' claim exemption of the two parcels. The court acknowledged the Chapter 13 Trustee's objection by issuing a scheduling order whereby either party could set the Chapter 13 Trustee's objection for hearing upon request. Neither party has requested such a hearing as of this date.

■ The Raynards filed their Chapter 13 plan at the same time they filed their schedules. Their original plan proposed paying nothing to unsecured creditors although their Schedule F discloses unsecured, non-priority debt of $88,101 as being owed either individually by one of them or jointly by both of them.[4] However, the Raynards thereafter filed a pre-confirmation amendment to their plan on February 17, 2005.[5] That amendment divided the Raynards' unsecured, non-priority creditors into two classes, with one class being comprised of those creditors with joint claims against both Mr. and Mrs. Raynard and the other class being comprised of creditors with claims against only Mr. Raynard or against only Mrs. Raynard. The amendment proposed to pay a base amount of $29,443 to the joint creditors but a base amount of only $1,000 to the other creditors.[6]

The Raynards filed a second pre-confirmation plan amendment on April 25, 2005. The second amendment identifies nine creditors as joint unsecured creditors. It further provides that each of these creditors is to "be paid 100 percent through the debt plan." The April 25, 2005 amendment leaves unchanged the $1,000 base amount proposed to be paid to the Raynards' other unsecured creditors.

There are no other amendments filed with respect to the Raynards' proposed Chapter 13 plan. Therefore, the plan presented for confirmation at the June 7, 2005 hearing was the Raynards' plan as amended on February 17, 2005 and then again on April 25, 2005. 11 U.S.C. § 1323. This plan shall be hereinafter referred to as the "April 25 amended plan."

## III. DISCUSSION

### A. Discrimination Between Classes of Unsecured Creditors.

■ A Chapter 13 plan may not be confirmed unless it complies with the provi-

---

$17,126 and the claimed exemption in the farm at $110,285. However, these amounts are nothing more than the difference between the Raynards' stated value for these two properties and the disclosed liens against them. Therefore, I interpret the Raynards' exemption claim as in fact a request to exempt all of the bankruptcy estate's interest in both of these parcels.

3. The Bankruptcy Code is incorporated into the United States Code as 11 U.S.C. § 101 *et seq.* Unless indicated otherwise, all references to "Section _____" in this opinion shall be to the Bankruptcy Code.

4.

| | |
|---|---|
| Unsecured debt owed by Mrs. Raynard | $16,290.00 |
| Unsecured debt owed by Mr. Raynard | 42,368.00 |
| Unsecured debt owed jointly by Mr. and Mrs. Raynard | 29,443.00 |
| TOTAL | $88,101.00 |

5. A debtor may amend his or her plan at any time prior to confirmation of the debtor's plan. 11 U.S.C. § 1323.

6. "Base amount" is a term of art used in this district to denote a Chapter 13 plan arrangement whereby unsecured, non-priority creditors with allowed claims share *pro rata* a fixed amount of funds contributed by the debtor based upon the amount of their allowed claims.

sions of both Chapter 13 and other applicable provisions of the Bankruptcy Code, 11 U.S.C. § 1325(a)(1). The issue presented in this case is whether the discriminatory treatment proposed by the Raynards in their April 25 amended plan conforms with this requirement.

■ There is no question that a debtor's Chapter 13 plan may designate two or more classes of unsecured claims and that the plan may then discriminate between the designated classes. 11 U.S.C. § 1322(b)(1). Indeed, Section 1322 itself provides two examples of permissible discrimination. First, Section 1322(a)(2) requires a debtor to prefer unsecured priority creditors by classifying them separately and then paying them 100% of their claims within the terms of the plan. Second, Section 1322(b)(1) permits a debtor to prefer creditors with joint claims against both the debtor and another individual on account of a consumer debt.[7]

■ Other permissible discrimination under Section 1322(b)(1) is subject to two requirements. First, each claim within a designated class must be substantially similar to the other claims within the same class. Second, the difference in treatment between one class of unsecured creditors and the other class or classes of creditors cannot be unfair.[8] Whether the proposed

discriminatory classification is fair or not is based upon the merits of the particular case. Factors to be considered are: (1) whether there is a reasonable basis for the classification; (2) whether the debtor is able to perform a plan without the proposed classification; (3) whether the classification is in good faith; and (4) whether the class subject to the unfavorable discrimination is receiving at least a meaningful payment. *In re Kovich,* 4 B.R. 403 (Bankr.W.D.Mich.1980).

In the instant case, the Raynards have designated nine of their unsecured creditors to receive distributions under their plan equal to 100% of the amount of those creditors' allowed claims. In contrast, their other creditors, who total sixteen in number and $53,606 in amount, are to share only $1,000.

■ The Raynards' desire to prefer their joint creditors over their other creditors stems from various courts' interpretations of Section 522(b)(2)(B). A bankruptcy estate is created whenever a bankruptcy proceeding is commenced and virtually every property interest of the debtor immediately and automatically becomes property of that estate. 11 U.S.C. § 541(a).[9] Section 522 then permits an individual debtor to remove from this estate (*i.e.,* exempt) certain items of prop-

---

**7.** The Raynards indicated at the June 7, 2005 hearing that they did not rely upon this provision to discriminate between their respective joint and individual creditors because at least some of their joint obligations were related to the operation of their farming business and therefore were not consumer related.

**8.** Specifically, Section 1322(b)(1) states that:

[T]he plan may—
(1) designate a class or classes of unsecured claims, as provided in section 1122 of this title, but may not discriminate unfairly against any class so designated; however, such plan may treat claims for a consumer debt of the debtor if an individual is liable

on such consumer debt with the debtor differently than other unsecured claims,

Section 1122 in turn states in part that:
(a) Except as provided in subsection (b) of this section, a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class.

**9.** An "estate" is created each time a bankruptcy proceeding is commenced. 11 U.S.C. § 541(a). Like a corporation or a trust, a bankruptcy estate is a distinct legal entity. *Farmer v. Crocker National Bank (In re Swift Aire Lines, Inc.),* 30 B.R. 490, 495 (9th Cir. BAP 1983); *In re Dow Corning Corp.,* 270 B.R. 393, 398–99 (Bankr.E.D.Mich.2001); *In*

erty in order to facilitate the debtor's "fresh start."[10] A debtor may choose between two sets of exemptions. One set, which is commonly referred to as the federal exemptions, is delineated in Section 522 itself. 11 U.S.C. § 522(b)(1) and (d). The other set is commonly referred to as the "state exemptions." These exemptions consist of whatever property is exempt under applicable state and local law and under non-bankruptcy federal law. 11 U.S.C. § 522(b)(2)(A). In addition, the "state exemptions" include:

> (B) any interest in property in which the debtor had, immediately before the commencement of the case, an interest as a tenant by the entirety or joint tenant to the extent that such interest as a tenant by the entirety or joint tenant is exempt from process under applicable nonbankruptcy law.

11 U.S.C. § 522(b)(2)(B).

▮▮▮▮▮ It is black letter law in Michigan as well as most other states that rec-

ognize tenancies by the entireties that only creditors of both the husband and wife can levy against property owned by the entireties. *Michigan National Bank v. Chrystler (In re Trickett)*, 14 B.R. 85, 86–87 (Bankr.W.D.Mich.1981); *see, also, e.g., Napotnik v. Equibank and Parkvale Savings Assn.*, 679 F.2d 316, 321 (3rd Cir.1982); *In re Monzon*, 214 B.R. 38 (Bankr.S.D.Fla. 1997); *Van Der Heide v. LaBarge (In re Van Der Heide)*, 164 F.3d 1183, 1184 (8th Cir.1999). Consequently, courts have interpreted Section 522(b)(2)(B) as being circumscribed by the amount of joint debt the debtor owes. In other words, the Section 522(b)(2)(B) exemption is not only a function of the value of the bankruptcy estate's equity in the entireties property claimed as exempt but also a function of the amount of enforceable claims held by creditors against both the debtor and his spouse. The debtor's allowed exemption is the value of the equity[11] in the undivided interest minus whatever debts are owed by

---

*re Roy Stanley, Inc.*, 217 B.R. 23, 25 (Bankr. N.D.N.Y.1997); *In re SeaEscape Cruises, Ltd.*, 201 B.R. 321, 323 (Bankr.S.D.Fla.1996). The bankruptcy estate exists apart from the debtor. It acts through its legal representative, the bankruptcy trustee. 11 U.S.C. § 323(a).

The bankruptcy estate is the foundation upon which the entire bankruptcy process rests. When the bankruptcy trustee acts, she acts as the representative of the bankruptcy estate, not as a representative of the debtor. For example, if the bankruptcy trustee liquidates property of the estate pursuant to Section 363, she conveys title to that property on behalf of the bankruptcy estate, not on behalf of the debtor. *In re Quinn*, 299 B.R. 450, 454 (Bankr.W.D.Mich.2003).

The bankruptcy estate may be a party to a contract. *See, In re Macomb Occupational Health Care, LLC*, 300 B.R. 270, n. 11 (Bankr. E.D.Mich.2003). The bankruptcy estate may also be liable for tortious conduct. *Id.*

The bankruptcy estate serves as the receptacle for all of a debtor's interests in property as of the date of the debtor's bankruptcy petition.

(a) . . . Such estate is comprised of all of the following property, wherever located and by whomever held:

> (1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case.

11 U.S.C. § 541(a)(1).

**10.** Providing an individual debtor with a "fresh start" is a fundamental objective of the Bankruptcy Code. Congress determined in the late 1970s that the former Bankruptcy Act, which had not had any major revision since 1938, did not adequately protect consumer debtors. *See, e.g.,* H.R.Rep. No. 95–595 at 116–118 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6076–79. It concluded that "bankruptcy relief should be effective, and should provide the debtor with a fresh start." 1978 U.S.C.C.A.N. at 6079.

**11.** In a Chapter 7 proceeding, the trustee accounts for liens and other encumbrances against property in which the bankruptcy estate also has an interest as part of her duty

the debtor jointly with his spouse. *See, e.g., In re Oberlies,* 94 B.R. 916, 918–19 (Bankr.E.D.Mich.1988).

Most, but not all courts, have also held that the portion of the entireties interest that cannot be exempted because of joint claims must be administered exclusively for the benefit of the joint claimants. *In re Oberlies,* 94 B.R. at 920–23; *In re McRae,* 308 B.R. 572, 576–79 (N.D.Fla. 2003); *In re Cerreta,* 116 B.R. 402, 405–6 (Bankr.D.Vt.1990); *In re Rentfro,* 234 B.R. 97, 99–100 (Bankr.W.D.Mo.1999); *In re Zella,* 196 B.R. 752, n. 4 (Bankr.E.D.Va. 1996); *In re Ginn,* 186 B.R. 898, 903 (Bankr.D.Md.1995); *In re Chandler,* 148 B.R. 13, 15 (Bankr.E.D.N.C.1992); *but see, In re Fishman,* 241 B.R. 568, n. 2 (Bankr. N.D.Ill.1999); *In re Wenande,* 107 B.R. 770, 774–75 (Bankr.D.Wyo.1989). These courts in effect create a separate bankruptcy estate to administer the entireties property in which the debtor has claimed a Section 522(b)(2)(A) exemption. Unless an accommodation can be reached with the debtor, the trustee administers this second estate by disposing of the entireties property pursuant to Section 363(b) and (h) and then distributing the proceeds to the two spouses' joint creditors based upon a procedure that parallels that which a trustee would normally follow when distributing other proceeds to a debtor's individual creditors. *See, e.g., Brown v. Eads (In re Eads),* 271 B.R. 371, 376–77 (Bankr. W.D.Mo.2002).

The Raynards contend that a trustee would in fact administer their residence and farm as a separate estate were they to have filed a Chapter 7 proceeding and, therefore, they must address the joint obligations they owe differently in order to comply with the "best interests" standard for confirmation. 11 U.S.C. § 1325(a)(4). That standard permits confirmation of a Chapter 13 plan only if:

> (4) the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date;

11 U.S.C. § 1325(a)(4).

The Raynards reason that their plan must prefer their joint creditors over their other creditors by creating a separate, 100% class for their joint creditors because a Chapter 7 trustee would have given these creditors the same preference had their bankruptcy estates been administered instead as Chapter 7 proceedings.[12] Indeed, *In re Chandler,* 148 B.R. 13 (Bankr.E.D.N.C.1992) is directly on point.

---

"to collect and reduce to money the property of the estate...." 11 U.S.C. § 704(1). *See also, In re Talbert,* 268 B.R. 811, 816 (Bankr. W.D.Mich.2001). In the context of a claimed Section 522(b)(2)(B) exemption, the Chapter 7 trustee would reduce the gross value of the subject property by the amount of liens and encumbrances and divide the remainder in half. The trustee would then subtract from the bankruptcy estate's half of the remainder the amount of joint claims against the debtor and his spouse to arrive at the allowed amount of the debtor's Section 522(b)(2)(B) exemption.

**12.** The issue before me could also be framed as arising under Section 1325(a)(4) instead of Sections 1325(a)(1) and 1322(b)(1). However the Raynards' justification for offering more to their joint creditors in order to meet the "best interests" test of Section 1325(a)(4) is the same as their justification for discriminating against their individual creditors by offering them less. The Raynards assume in each case that whatever cannot be exempted under Section 522(b)(2)(B) because of joint creditors must be administered for the benefit of only those joint creditors. I have chosen to address the issue as one of unfair discrimination because that is how the Raynards have presented their argument.

In *Chandler*, the court confirmed a joint Chapter 13 plan in which the married debtors proposed to pay their joint creditors 100% of their claims plus interest instead of the much smaller percentage offered to their individual creditors so as to protect their entireties property from their joint creditors' claims.

 I cannot argue with the Raynards' logic. However, I do question the premise upon which it is based. While the Bankruptcy Code clearly permits a Chapter 13 debtor to discriminate among his creditors, the Bankruptcy Code also places a premium upon creditors being treated equally. Indeed, the Sixth Circuit recently ruled that attorneys who represent Chapter 11 debtors must disgorge interim compensation received in order to equalize distribution among Chapter 11 administrative claimants. *Specker Motor Sales Co. v. Eisen*, 393 F.3d 659 (6th Cir.2004).

> "Equality of distribution among creditors is a central policy of the Bankruptcy Code. According to that policy, creditors of equal priority should receive *pro rata* shares of the debtor's property." *Begier v. Internal Revenue Service*, 496 U.S. 53, 58, 110 S.Ct. 2258, 110 L.Ed.2d 46 (1990). Equality of distribution would be vitiated if one equally situated administrative claimant-Bays-received more than his *pro rata* share.

*Id.* at 664.

 Consequently, a court should always scrutinize a debtor's reasons for creditor discrimination in a plan.

Moreover, the funds which the Raynards intend to use to pay their joint creditors in full are funds which otherwise would have to be made available to all of their creditors, both joint and individual. 11 U.S.C. § 1325(b)(1). The Raynards in a sense are proposing a plan whereby they are effectively using property of the estate [13] that could be used to pay all creditors under a plan to instead redeem their farm and residence from a group of joint creditors. The law might treat such conduct as fraudulent if an insolvent debtor were to convert property in this fashion outside of the context of a bankruptcy proceeding. *Dunn v. Minnema*, 323 Mich. 687, 692, 36 N.W.2d 182 (1949); *In re Elkins*, 94 B.R. 932, 934 (Bankr.W.D.Mich.1988).

Therefore, it is appropriate to look more closely at what the Raynards' propose. Specifically, it is appropriate to test the Raynards' premise that the "non-exempt" portion of their interest in the entireties property would be administered for the exclusive benefit of their joint creditors were their case instead administered as a Chapter 7 case.

## B. *Trickett and Grosslight.*

*Michigan National Bank v. Chrystler (In re Trickett)*, 14 B.R. 85 (Bankr. W.D.Mich.1981) and *Liberty State Bank and Trust v. Grosslight (In re Grosslight)*, 757 F.2d 773 (6th Cir.1985) are two seminal cases regarding the administration of entireties property in a bankruptcy proceeding. The Raynards in fact cite both of these cases as justification for the discriminatory treatment proposed in their plan.

---

**13.** Section 1306 provides that property of the estate for purposes of a Chapter 13 includes all post-petition earnings until the case is closed, dismissed, or converted to another chapter. The Raynards' income does not technically fall within the ambit of this provision because it derives from the operation of their farm instead of from services rendered for another. However, it is nonetheless fair to frame the issue in this context unless a distinction is to be drawn between wage and salary earners who want to prefer their joint creditors in a Chapter 13 proceeding and entrepreneurs who want to prefer their joint creditors in a Chapter 13 proceeding.

However, neither of these cases is directly on point because each ultimately turns on procedure, not substance.

*Trickett* was decided shortly after the enactment of the Bankruptcy Code. Wilson Trickett had filed a petition for relief under Chapter 7. Verda Trickett, his wife, did not join in the petition. Mr. and Mrs. Trickett owned a number of parcels of property as tenants by the entirety. Mr. Trickett set the value of his wife's and his interests in these properties at more than $2 million. Michigan National Bank was a joint creditor of Mr. and Mrs. Trickett. Its claim was approximately $40,000. Another joint creditor had a claim against the Tricketts in the amount of $65,000.

Under the former Bankruptcy Act, creditors holding unsecured claims against the debtor and his spouse were barred from enforcing their claims against entireties property once the debtor's discharge was entered. *Fetter v. United States,* 269 F.2d 467 (6th Cir.1959); *Harris v. Manufacturers National Bank of Detroit,* 457 F.2d 631 (6th Cir.1972), *cert. denied* 409 U.S. 885, 93 S.Ct. 118, 34 L.Ed.2d 142 (1972). Consequently, a procedure had evolved in this district under the former Bankruptcy Act whereby joint creditors were given the opportunity to enforce their joint claims against entireties property before the debtor's discharge was entered. *In re Black,* 14 C.B.C. 481 (W.D.Mich.1977). The order to stay the debtor's discharge pursuant to such a request was referred to in this district as a *"Black* order."

Michigan National Bank commenced an adversary proceeding against Mr. Trickett. Michigan National Bank's complaint requested both relief from the automatic stay so that Michigan National Bank could proceed with a state court action to collect its joint claim against Mr. and Mrs. Trickett and the entry of a *Black* order pending the outcome of the state court action. The court in *Trickett* denied both requests on the basis that such relief was no longer necessary under the Bankruptcy Code. The court described the *"Black* order" process as both cumbersome and unfair.

The *Trickett* court also suggested an alternative procedure. The suggested procedure recognizes a separate class of creditors consisting of only those creditors with claims against both the debtor and the debtor's non-filing spouse. These creditors are given the opportunity to file "joint" proofs of claim against the bankruptcy estate. Whatever joint claims are filed are then separately administered by the trustee. The trustee first subjects the joint claims to a separate objection process. If joint claims still remain after objection, the trustee must dispose of the entireties property pursuant to Sections 363(h), (i) and (j). The trustee then distributes the bankruptcy estate's portion of these proceeds to those joint creditors whose joint claims have been allowed. If the bankruptcy estate's portion of the proceeds is greater than the amount of the allowed joint claims, the surplus is distributed to the debtor.

*Grosslight* involved a similar factual situation. Liberty State Bank, like Michigan National Bank, wanted to protect its joint claim against Terry Grosslight and his non-filing spouse from the consequences of *Harris* and *Fetter.* Therefore, Liberty State Bank had commenced an adversary proceeding to modify the automatic stay so that it could proceed with its state court collection action against both Mr. and Mrs. Grosslight. It also appears that Liberty State Bank had requested the bankruptcy court to defer the granting of Mr. Grosslight's discharge. The bankruptcy court denied both requests and granted Mr. Grosslight his discharge. *Grosslight,* 757 F.2d at 775. The district court affirmed the bankruptcy court's decision.

However, the Sixth Circuit reversed. Apparently, the bankruptcy court had treated Liberty State Bank's adversary proceeding as either untimely or moot because it was filed after the time within which Liberty State Bank could have sought a deferral of Mr. Grosslight's discharge and Liberty State Bank had not otherwise secured such a deferral. The Sixth Circuit reversed because it concluded that the proper procedure for addressing the *Harris/Fetter* problem under the Bankruptcy Code was to file an objection to Mr. Grosslight's claimed Section 522(b)(2)(B) exemption. The Sixth Circuit agreed that Liberty State Bank had not technically filed an objection to Mr. Grosslight's claimed exemption. However, it determined that the adversary proceeding was the substantive equivalent of such an objection and that the adversary proceeding had been filed within the time permitted to object to Mr. Grosslight's exemptions. Therefore, the Sixth Circuit directed the bankruptcy court to administer the subject entireties interests as if Liberty State Bank had filed a proper objection to exemptions. *Grosslight*, 757 F.2d at 777.

The Raynards read into *Trickett* and *Grosslight* much more than either of these two decisions deserve. Neither decision addressed head on the question that is squarely before me in this instance: whether the non-exempt portion of entireties property claimed as exempt under Section 522(b)(2)(B) is to be administered for the benefit of only the bankrupt debtor's joint creditors or for the benefit of the bankrupt debtor's individual creditors as well. Judge Nims, in *Trickett*, clearly

concluded that Mr. Trickett's interests in the entireties property were to be administered for the benefit of joint creditors. However, he reached this conclusion at the request of Michigan National Bank, a joint creditor, in the context of preserving Michigan National Bank's rights vis-a-vis a non-filing spouse. He determined that the relief Michigan National Bank was requesting was "somewhat clumsy" and that it gave an unfair advantage to aggressive joint creditors. *Trickett*, 14 B.R. at 90. He also determined that the newly enacted Bankruptcy Code gave him the authority to administer the entireties property claimed as exempt under Section 522(b)(2)(B) more efficiently and more equitably vis-a-vis all joint creditors. However, Judge Nims was never called upon in *Trickett* to consider whether Section 522(b)(2)(B) itself authorized the administration of the non-exempt portion of the entireties property for the exclusive benefit of only Mr. Trickett's joint creditors. Nor was Judge Nims called upon in *Trickett* to consider the implications of the procedure he suggested [14] when that procedure would be used to justify discriminating treatment in a Chapter 13 plan. Therefore, the Raynards' reliance upon *Trickett* is misplaced.

The Sixth Circuit likewise was never called upon in *Grosslight* to consider Section 522(b)(2)(B) from the perspective of whether the non-exempt portion of the entireties interest claimed should be administered for the benefit of all of Mr. Grosslight's creditors as opposed to only his joint creditors. The Sixth Circuit devoted most of its decision in *Grosslight* to

---

**14.** The procedure set forth in *Trickett* is only a proposal. Judge Nims ended his opinion with a request for "suggestions or briefs" regarding what he had proposed. *Id.* at 90. However, this court has never in fact formally adopted the procedure Judge Nims suggested.

The procedure outlined in *Trickett* has simply by default become the accepted method within this district for administering entireties property claimed as exempt under Section 522(b)(2)(B).

comparing the Fourth Circuit's position in *Greenblatt v. Ford*, 638 F.2d 14 (4th Cir. 1981) with the Third Circuit's position in *Napotnik v. Equibank and Parkvale Savings Assn.*, 679 F.2d 316 (3rd Cir.1982). The Sixth Circuit ultimately determined that *Napotnik* was the better view. 757 F.2d at 777. However, *Napotnik* itself is silent as to how the non-exempt portion of the entireties interest claimed under Section 522(b)(2)(B) is to be administered.[15] Nor did the Sixth Circuit offer any independent analysis as to why joint creditors should be preferred over other creditors with respect to the portion of the entireties interest not allowed as exempt under Section 522(b)(2)(B). Like the court in *Trickett*, the Sixth Circuit focused upon the procedure advocated by the particular joint creditor before it. Indeed, its entire discussion concerning how the non-exempt portion is to be administered is limited to a single paragraph which expresses only a preference for administration of the entireties property through the bankruptcy proceeding.

It follows that Liberty is entitled to file a proof of claim on remand and attempt to show the validity of its claim. In appropriate cases, the court may lift the automatic stay to allow the creditor to proceed against the entireties property in state court. 11 U.S.C. § 362(d). We see no reason for such a procedure here,

when judicial economy would be better served by a single proceeding in bankruptcy court.

*Grosslight*, 757 F.2d at 777.

 I recognize that *Grosslight* can be interpreted as an implicit (and prophetic) adoption of the position later taken by other courts, that being that the non-exempt portion of entireties property claimed as exempt under Section 522(b)(2)(B) is to be administered only for the benefit of joint creditors. *See, e.g., In re Oberlies*, 94 B.R. at 922. I am also keenly aware of being reversed by the district court in a prior decision because I did not treat as binding implicit decisions the Sixth Circuit apparently made in connection with *Grosslight*. *See, In re Spears*, 313 B.R. 212 (W.D.Mich.2004). Nonetheless, my conscience does not permit me in this instance to accept as controlling law yet another implication of *Grosslight* when there is no evidence that the Sixth Circuit even deliberated on the issue at hand. All federal judges have the same responsibility when bankruptcy law is involved. We are to interpret as best we can Congress' intent as manifested in the Bankruptcy Code. I readily acknowledge my duty to accept the Sixth Circuit's interpretation of the Bankruptcy Code in lieu of my own whenever our interpretations differ. However, my duty does not

---

**15.** *Napotnik* involved Section 522(f). Mr. Napotnik owned property as a tenant by the entirety with his non-debtor spouse. He claimed his interest in the entireties property as exempt pursuant to Section 522(b)(2)(B). He also brought a motion to avoid Equibank's judicial lien in his interest pursuant to Section 522(f). That section permits a debtor to avoid a judicial lien to the extent the lien impairs an exemption.

The Third Circuit rejected Mr. Napotnik's argument that all of his interest in the entireties property was exempt under Section 522(b)(2)(B). It instead affirmed the bankruptcy court's ruling that the lien was un-

avoidable because it derived from a joint claim against debtor and his spouse. Consequently, that portion of his interest in the entireties property was not "exempt from process under applicable non-bankruptcy law" and therefore not exempt under Section 522(b)(2)(B) either. *Napotnik* did not address the issue of whether the non-exempt portion of entireties property Mr. Napotnik claimed as exempt under Section 522(b)(2)(B) was to be administered for the benefit of all creditors or just for the benefit of joint creditors because that issue was irrelevant to Mr. Napotnik's Section 522(1) lien avoidance motion.

require me to also accept without question the implicit assumptions made by the Sixth Circuit in its interpretations. It remains within my prerogative to question the assumptions made, particularly when the Bankruptcy Code itself raises the question. If I am mistaken, then a higher court can explain to me why I am incorrect. However, I am also duty-bound to make sure that the Sixth Circuit has given due consideration to an issue previously assumed but now at center stage. Otherwise, there is the substantial risk that the bankruptcy law we enforce will become something entirely different from what Congress intended.

## C. *Oberlies, Monzon, and McRae.*

There are a number of cases in which a court has held that the non-exempt portion of the entireties property claimed as exempt under Section 522(b)(2)(B) is to be administered for the benefit of only the debtor's joint creditors.[16] However, only *In re Oberlies*, 94 B.R. 916 (Bankr. E.D.Mich.1988), *In re Monzon*, 214 B.R. 38 (Bankr.S.D.Fla.1997), and *In re McRae*, 308 B.R. 572 (N.D.Fla.2003) offer an explanation for the conclusion reached.

■■■■■ I begin by observing that the courts in *Oberlies*, *Monzon*, and *McRae* each fought an uphill battle to reach their respective conclusions. It is universally accepted among all courts that a debtor's

interest in entireties property becomes property of his bankruptcy estate. *In re Grosslight*, 757 F.2d at 775; *In re Hunter*, 970 F.2d 299, 305 (7th Cir.1992); *Garner v. Strauss (In re Garner)*, 952 F.2d 232, 234 (8th Cir.1991); *In re Napotnik*, 679 F.2d at 318. Indeed, the debtor's interest in entireties property becomes property of the debtor's estate even if the debtor's spouse does not join him in his petition for bankruptcy relief. *See, e.g., In re Grosslight*, 757 F.2d at 775. Whether that interest remains in the bankruptcy estate depends upon whether the debtor claims the interest as exempt and then upon whether the exemption claimed is allowed. 11 U.S.C. § 363(1). If the interest is not removed as an allowed exemption, it remains property of the estate. *In re Monzon*, 214 B.R. at 40–41.[17]

■■■ Moreover, Section 726 requires distribution of the property of the estate pursuant to a priority scheme that makes no distinction between claims against only the debtor and claims against both the debtor and his spouse. Nor is there any distinction between property of the estate deriving from the debtor's interest in entireties property and property of the estate deriving from the debtor's interest in other types of property. Indeed, Judge Spector acknowledged in *Oberlies* that:

> [n]o statutory basis exists for requiring the bankruptcy trustee to administer a

**16.** *In re Oberlies*, 94 B.R. at 920–23; *In re McRae*, 308 B.R. 572, 576–79 (N.D.Fla.2003); *In re Cerreta*, 116 B.R. 402, 405–06 (Bankr. D.Vt.1990); *In re Rentfro*, 234 B.R. 97, 99–100 (Bankr.W.D.Mo.1999); *In re Zella*, 196 B.R. 752, n. 4 (Bankr.E.D.Va.1996); *In re Ginn*, 186 B.R. 898, 903 (Bankr.D.Md.1995); *In re Chandler*, 148 B.R. 13, 15 (Bankr. E.D.N.C.1992).

**17.** Assume, for example, that Mr. and Mrs. Smith own Blackacre by the entireties and that it is not subject to any liens. Assume further that Mr. Smith, but not Mrs. Smith,

files a petition for relief under Chapter 7. Finally, assume that Mr. Smith elects not to exempt Blackacre because Blackacre is contaminated. There is no question that Mr. Smith's interest in Blackacre would continue to be property of the estate under this scenario. It would be the Chapter 7 trustee's duty to administer what had been Mr. Smith's interest in the entireties estate along with the rest of Mr. Smith's property interests that had become property of the estate. 11 U.S.C. § 704(1).

separate estate within the context of the overall bankruptcy case for the benefit of joint creditors.

*Oberlies,* 94 B.R. at 920.

Therefore, the burden was upon the courts in *Oberlies, Monzon and McRae* to justify an alternative scheme for the distribution of the non-exempt portion of entireties property claimed as exempt under Section 522(b)(2)(B).

■ The first argument offered to support administering the non-exempt interest for the benefit of only joint creditors is that "the plain language of § 522(b)(2)(B)" requires separate administration.

[A] pro rata distribution of entireties property to all creditors would be inconsistent with § 522(b)(2)(B) since that provision was intended to incorporate Florida's protection of these parties. It would make no sense for Congress to enact § 522(b)(2)(B) which entitles joint creditors to reach entireties property in bankruptcy, yet substantially dilute that interest once that property is in the estate by requiring joint creditors to share the entireties property with individual creditors.

*Monzon,* 214 B.R. at 48.

I agree that the plain language of Section 522(b)(2)(B) directs courts to defer to state law to determine what portion of the debtor's interest in the entireties property may be removed from the bankruptcy estate as exempt and what portion must remain for further administration by the bankruptcy trustee. However, to then assert that Section 522(b)(2)(B) further requires the establishment of what *Oberlies*

described as a "separate estate"[18] with its own set of judicially created rules is speculation, not statutory interpretation. *Monzon* cites neither statute nor legislative history for the conclusion it reached. Nor is *Monzon's* conclusion self-evident. Section 522 is a "debtor section" in the sense that its purpose is to set the parameters of what property the debtor may retain in order to accomplish his fresh start.[19] Section 522 reflects Congress' effort to define what may be claimed as exempt and what may not be claimed as exempt and nothing more. Consequently, Section 522(b)(2)(B) should be interpreted from only that perspective.

Section 726 also casts doubt upon the interpretation of Section 522(b)(2)(B) championed by *Monzon, Oberlies,* and *McRae.* As already discussed, Section 726(a) establishes a scheme for distributing all property of the estate without distinction between entireties interests and other property and without distinction between joint claims and other claims. However, Section 726(c) does provide a separate scheme for the administration of community property included in the bankruptcy estate pursuant to Section 541(a)(2) and "community claims"[20] against that property. The detailed procedure set forth in Section 726(c) establishes not only that Congress was · aware of the special issues raised in connection with marital property but also that Congress was capable of enacting special procedures to address these issues when it determined that such procedures were necessary. Consequently, it is fair to ask why Congress did

---

**18.** *In re Oberlies,* 94 B.R. at 920.

**19.** *In re Spears,* 308 B.R. 793, 825–26, *rev'd* by 313 B.R. 212 (W.D.Mich.2004).

**20.** A "community claim" is:

[a] claim that arose before the commencement of the case concerning the debtor for which property of the kind specified in section 541(a)(2) of this title is liable, whether or not there is any such property at the time of the commencement of the case.
11 U.S.C. § 101(7).

not adopt another set of special procedures with respect to non-exempt entireties property under Section 522(b)(2)(B) if in fact Congress intended that result.

■ One can certainly argue that Congress simply overlooked the fact that special procedures were also needed to protect "joint claims" (as opposed to "community claims") under Section 522(b)(2)(B). However, the Supreme Court has instructed that the courts are not to correct Congress' mistakes.

> If Congress enacted into law something different from what it intended, then it should amend the statute to conform it to its intent. "It is beyond our province to rescue Congress from its drafting errors, and to provide for what we might think ... is the preferred result." *United States v. Granderson*, 511 U.S. 39, 68, 114 S.Ct. 1259, 127 L.Ed.2d 611. 511 U.S. 39, 114 S.Ct. 1259, 127 L.Ed.2d 611 (1994) (concurring opinion). This allows both of our branches to adhere to our respected, and respective, constitutional roles. In the meantime, we must determine intent from the statute before us.

*Lamie v. U.S. Trustee*, 540 U.S. 526, 542, 124 S.Ct. 1023, 1034, 157 L.Ed.2d 1024 (2004).

Moreover, there is good reason to believe that Congress did not err when it enacted the Bankruptcy Code without a special procedure for the administration of non-exempt entireties property either within Section 522(b)(2)(B) itself or as another subsection of Section 726. The purpose of such a procedure would be to prefer a debtor's joint creditors over his other creditors with respect to the entireties property. However, assume that the debtor chooses the so-called federal exemptions under Section 522(b)(1) instead of the Section 522(b)(2) state exemptions. The available exemption with respect to the debtor's entireties interest under that scenario would be based upon Sections 522(d)(1) and (d)(5).[21] If the value of the debtor's interest were greater than these allowed exemptions, then the trustee would presumably liquidate that interest pursuant to Section 363(b) in conjunction with Section 363(h), *In re Spears*, 308 B.R. 793 (Bankr.W.D.Mich.2004), *rev'd* 313 B.R. 212 (W.D.Mich.2004), and account to the debtor for whatever allowed exemptions he claimed. As for the remainder of the proceeds, it is clear that the trustee would distribute the remainder to all creditors, and not just joint creditors. 11 U.S.C. § 726(a). As Judge Lundin observed, there is no provision comparable to Section 522(b)(2)(B) when the federal exemptions are taken. *Waldschmidt v. Hamilton (In re Hamilton)*, 32 B.R. 337, 340 (Bankr. M.D.Tenn.1983).

I see no reason why Congress would intend this result if the debtor were to

---

**21.** The following property may be exempted under subsection (b)(1) of this section:

 (1) The debtor's aggregate interest, not to exceed $18,450 in value, in real property or personal property that the debtor or a dependent of the debtor uses as a residence, in a cooperative that owns property that the debtor or a dependent of the debtor uses as a residence, or in a burial plot for the debtor or a dependent of the debtor.

 \* \* \* \* \* \*

 (5) The debtor's aggregate interest in any property, not to exceed in value $975 plus up to $9,250 of any unused amount of the exemption provided under paragraph (1) of this subsection.

11 U.S.C. §§ 522(d)(1) and (5).

choose the federal exemption scheme yet prefer joint creditors over others if the debtor were to choose the state exemption scheme. Again, the trustee would presumably liquidate the entireties interest pursuant to Section 363(b) in conjunction with Section 363(h). Granted, the amount of the proceeds to be distributed to the debtor as his exemption under Section 522(b)(2)(B) is based not upon a fixed amount as under Section 522(d)(1) but rather is a function of the amount of joint creditors' claims against both his spouse and him. Nonetheless, once this amount is determined, it is logical that the remainder should still be distributed to all creditors as would be the case had the federal exemptions under Section 522(b)(1) been chosen instead.

The second argument offered to justify separate administration of the non-exempt portion of entireties property claimed as exempt under Section 522(b)(2) is that deference to state law requires such an outcome.

> [T]he mere fact that statutes do not specifically address the issue does not mean that the procedure is improper. The procedure is clearly a creature of judicial interpretation of state property rights. It is not unusual for there to be some tension when administering state property rights in a federal bankruptcy context. When there is a seeming clash, our duty is to abide by the state substantive law unless there is an overriding federal policy which ought to take precedence. *Butner v. United States*, 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979). The absence of specific enabling legislation to direct the trustee to administer separate estates is not such an overriding federal policy. Thus, state law, which gives joint creditors, but only joint creditors, rights in entireties property, should prevail in this context.

*In re Oberlies*, 94 B.R. 916, 920, (Bankr. E.D.Mich.1988); *See also, Monzon*, 214 B.R. at 46–48, and *McRae*, 308 B.R. at 577–78.

However, *Butner* is not on point because property rights are not at issue. The reason why joint creditors enjoy the position that they do with respect to entireties property is not because they themselves have an interest in the entireties estate. Rather, it is the unique character of the debtor's property interest in the entireties estate that gives a joint creditor its advantage.

> It is well settled that when a judgment is rendered against one of two tenants by entireties, a levy under execution on such judgment cannot be made on the real estate held by them as tenants by entireties. This is because [sic] of the peculiar nature of the estate held by them. Both are seized of the whole, and an estate by entireties is inseparable and cannot be partitioned. Therefore, it has been quite universally held that an estate by entireties cannot be sold upon execution on a judgment rendered against either the husband or wife, because neither has any separate interest in such an estate.

*Sanford v. Bertrau*, 204 Mich. 244, 248–49, 169 N.W. 880 (1918).

On the other hand, the protection afforded to each spouse disappears if the creditor is fortunate enough to be a creditor of both spouses.

> Upon principle, we can see no reason why the real estate of husband and wife held by them as tenants by the entireties, independent of homestead and statutory exemptions, should not be subjected to the payment of their joint debts. They own the entire property. The parts cannot be greater than the whole. They may dispose of it by their joint action. Each is liable to pay the whole

judgment, and both are liable to pay any part of it.

*Id.* at 253–54, 169 N.W. 880.

It may have been convenient for the court in *Oberlies* to describe a joint creditor's ability to levy tenancies by the entirety as property interests in order to cite *Butner* as justification for its creation of a separate estate for the benefit of joint creditors. However, I doubt whether the *Oberlies* court seriously believed that a joint creditor's ability to levy is in fact a property right. Otherwise, the court would have then been compelled to explain why unsecured creditors generally should not also be treated as having property rights in, for example, a vacant lot owned by a debtor in fee without co-owners simply because each of those creditors had the ability to levy against that lot pre-petition. Moreover, the court would have also had to explain why a joint creditor should not be able to demand the establishment of a similar separate estate for the administration of its supposed property rights when the debtor with an interest in entireties property chooses the federal exemptions under Section 522(b)(1) instead.[22]

The distribution scheme required by Section 726 undeniably alters what a joint creditor otherwise might have expected to receive from the debtor had the joint creditor recovered its claim against the debtor and his spouse in conjunction with a state court judgment outside the context of a bankruptcy proceeding. However, the Bankruptcy Code, by its very nature, frequently alters a creditor's expectations. For example, the avoidance powers granted by Section 547 permit a bankruptcy trustee to transform what had been a 100% pre-petition recovery by a creditor into what may be no recovery at all. Lest there be any doubt as to this point, the Supreme Court itself has declared that neither contrary state law nor prior practice can override the Bankruptcy Code when its meaning is clear. *BFP v. Resolution Trust Corp.*, 511 U.S. 531, 546, 114 S.Ct. 1757, 1765, 128 L.Ed.2d 556 (1994).

In this instance, the Bankruptcy Code is unambiguous. A debtor who claims the Section 522(b)(2) exemptions may exempt his interest in entireties property. However, the amount of that exemption in Michigan is net of whatever amount he owes to joint creditors. As for the portion of his interest that may not be exempted, that portion remains as property of the estate for distribution to unsecured creditors pursuant to Section 726(a). Therefore, the courts' efforts in *Oberlies*, *Monzon*, and *McRae* to judicially create a second estate with its own set of rules do not find support in the Bankruptcy Code itself.

The third argument to justify the creation of a separate estate is equity. For example, the court in *McRae* determined that it would be "patently unfair" for all creditors to share in the non-exempt portion of the entireties property claimed by a debtor pursuant to Section 522(b)(2)(B).

---

**22.** Assume that the debtor owns Blackacre as a tenant by the entireties with his non-filing spouse but that he elects the Section 522(b)(1) federal exemptions instead because the amount of joint claims owed by his wife and him exceeds the equity in Blackacre. Section 522(b)(1) has no provision comparable to the entireties property exemption included within Section 522(b)(2)(B). However, if, as *Oberlies* contends, joint creditors have a property right in tenancies by the entirety, should not the debtor's joint creditors be able to exercise that same property right when the debtor elects the Section 522(b)(1) exemptions? In other words, should not the debtor's joint creditors, as "property owners," also be able to have the non-exempt portion of the entireties property administered for their exclusive benefit whenever the federal exemptions are elected even though that exemption scheme contains no provision similar to Section 522(b)(2)(B)?

Since a debtor's individual creditors could never have reached the entireties property under Florida law, they cannot obtain a different and more favorable result in bankruptcy by sharing in the distribution of these assets.

*In re McRae,* 308 B.R. at 578.

 However, the Bankruptcy Code is replete with perceived inequities. Indeed, the Section 726(a) distribution system itself is inequitable in the sense that it treats a creditor who has diligently pursued a debtor to judgment no differently than a creditor who has written off its debt as uncollectible. Each shares equally so long as a proof of claim is filed. The point is that Congress is empowered to readjust creditors' rights however it sees fit under its constitutional authority to create uniform bankruptcy laws. As the *McRae* court itself observed:

The distribution of assets in a bankruptcy estate is a federal question except to the extent that the Code specifically makes state law controlling. *See City of New York v. Rassner,* 127 F.2d 703 (2nd Cir.1942). In this regard, "[s]tate law regulating the distribution of assets among creditors must give way to the all-encompassing federal law of creditors' rights." *Matter of Quanta Resources Corp.,* 739 F.2d 912 (3rd Cir. 1984); *see also American Sur. Co. of New York v. Sampsell,* 327 U.S. 269, 66 S.Ct. 571, 90 L.Ed. 663 (1946) ("[W]e recently had occasion to reiterate that federal bankruptcy law, not state law, governs the distribution of a bankrupt's assets to his creditors.").

*Id.* at 577.

In this instance, Congress has adjusted creditors' rights such that all will share equally with respect to whatever portion of the debtor's entireties interest is not allowed as exempt pursuant to Section 522(b)(2)(B). Whether the adjustment is equitable or not to joint creditors is irrelevant.

The final argument to justify the creation of a separate estate is also based upon equity. However, the victim of this perceived inequity is not the joint creditor, but rather the non-debtor spouse.

Granting an individual creditor the opportunity to reap the assets of entireties property in bankruptcy diminishes the non-debtor spouse's interest in such property since the debtor spouse would not have been able to subject the entireties property to the reach of individual creditors under Florida law.

*In re Monzon,* 214 B.R. at 47.

The relevance of this argument is also questionable. Even if one assumes that the non-debtor spouse's interest will be diluted if all creditors share equally with respect to the debtor's interest, it does not follow that the non-debtor spouses's interest is entitled to protection. Congress did not ignore the non-filing spouse when it crafted the exemption scheme set forth in Section 522. Many of the exemptions described in Section 522(d) permit consideration of not only the needs of the debtor himself but also the needs of his non-filing spouse and other dependents. *See, e.g.,* 11 U.S.C. §§ 522(d)(1), (3), (4), (6), (9), (10)(D) and (E), and (11)(B), (C), and (E). There is nothing in the Bankruptcy Code or the underlying legislative history that reveals a congressional intent to further protect non-filing spouses who own interests in entireties property with their husbands from the consequences of their husband's decision to file a bankruptcy proceeding. If further protection is needed, the appropriate recourse is for the non-filing spouse to either join in her husband's petition or commence her own bankruptcy proceeding.

Moreover, the perceived inequity does not exist in the instant case because both

Mr. and Mrs. Raynard have sought bankruptcy protection. The court in *Monzon* apparently believed that administration of the debtor's non-exempt interest in entireties property through a separate estate was necessary to ensure that the proceeds therefrom would be used to reduce dollar for dollar the joint indebtedness owed. The court was concerned that the non-filing spouse might otherwise unfairly shoulder the burden of the joint obligation.

 However, what was a concern in *Monzon* is not a concern in this instance because Mr. and Mrs. Raynard each seek exactly the same protection under the bankruptcy laws as the other. Both anticipate receiving a discharge of all their debts, joint and individual, and both expect the injunctive relief afforded by Section 522(c) with respect to whatever interest they are allowed to exempt in conjunction with their farm and residence.[23]

### D. *State Exemptions.*

Michigan recently adopted a new set of exemptions designed specifically for debt-

---

**23.** My interpretation of Section 522(b)(2)(B) does create an issue when only one spouse files a petition for relief. If, as I have concluded, the debtor's undivided interest in entireties property is to be liquidated for the benefit of all of his creditors, and not just his joint creditors, when the debtor elects the Section 522(b)(2) exemptions, then it is very unlikely that his joint creditors will be paid in full. Therefore, the *Harris/Fetter* problem remains. That is, the non-debtor spouse will unfairly benefit from the debtor's discharge because there will no longer be joint claims against her entireties interest. Consequently, the courts may again have to resort to modifications of the automatic stay and deferrals of a debtor's discharge (*i.e.,* so-called *Black* orders in this district) in order to alleviate this inequity in Chapter 7 proceedings. Likewise, discrimination like that proposed by the Raynards may be justified in a Chapter 13 proceeding whenever only one of the spouses seeks such relief.

I am not in favor of resurrecting the *Black* order. I agree with *Trickett* that the *Black* order procedure was clumsy and unfair. Moreover, the remedy offered by the *Black* order, that being the indefinite deferral of the debtor's discharge, runs counter to the requirement that a debtor's discharge be granted "forthwith." Fed.R.Bankr.P. 4004(c). However, my own resolution of this problem is not to use judicial prestidigitation to arrive at the outcome desired. Rather, I have simply relied upon the Bankruptcy Code for an answer. My conclusion is that the problem posed by *Harris* and *Fetter* no longer exists under the Bankruptcy Code because the entireties estate is severed at the commencement of a bankruptcy proceeding and is replaced by a tenancy in common. I set forth my reasoning in great detail in *In re Spears,* 308 B.R. 793 (Bankr.W.D.Mich.2004), *rev'd* 313 B.R. 212 (W.D.Mich.2004). I would only add at this point that the notion of an entireties estate continuing under the Bankruptcy Code is even more absurd when considered in the context of a joint petition filed under Chapter 13. Michigan law is extremely clear that only a husband and wife may own property as tenants by the entirety. *Budwit v. Herr,* 339 Mich. 265, 273, 63 N.W.2d 841 (1954); *Field v. Steiner,* 250 Mich. 469, 477, 231 N.W. 109 (1930); *Hoyt v. Winstanley,* 221 Mich. 515, 519, 191 N.W. 213 (1922). However, in this instance, two separate bankruptcy estates (*i.e.,* Mr. Raynard's bankruptcy estate and Mrs. Raynard's bankruptcy estate) replaced Mr. and Mrs. Raynard as the owners of their farm and residence when they filed their joint petition. It is distinctly possible. that these two legal creations, who enjoy neither the benefit of marriage nor mortality, could continue to own the farm and residence as the two co-tenants for up to five years while the Raynards complete their Chapter 13 plan. *See,* 11 U.S.C. §§ 1322(b)(9) and (d). *See also,* 11 U.S.C. § 1327(b).

However, as already discussed, *Harris* and *Fetter* need not concern me in this instance because both Mr. and Mrs. Raynard are seeking bankruptcy relief and, therefore, the problem of a husband and wife unfairly benefitting from the bankruptcy filing of only one spouse does not exist. I will leave it to other courts to explain why, for example, a Chapter 13 debtor should be allowed to use his disposable income to prefer joint creditors when he alone files for relief but a Chapter 13 debtor should not be allowed to offer the same preference when both his wife and he file jointly for such relief.

ors seeking relief under the Bankruptcy Code. MICH. COMP. LAWS § 600.5451.[24] These exemptions include:

> (o) Property described in section 1 of 1927 PA 212, MCL 557.151, or real property, held jointly by a husband and wife as a tenancy by the entirety, except that this exemption does not apply with regard to a claim based on a joint debt of the husband and wife.

MICH. COMP. LAWS § 600.5451(1)(o).

·This exemption is available to the Raynards because the Raynards filed their petition on January 13, 2005, ten days after the new legislation became effective.[25]

MICH. COMP. LAWS § 600.5451(1)(o) offers the Raynards the opportunity to sidestep the debate concerning the administration of the non-exempt portion of entireties property claimed under Section 522(b)(2)(B) by permitting them to exempt the entire entireties interest under Section 522(b)(2)(A). The only catch is that this newly created state exemption does not extend to claims based upon the joint debt

of a husband and wife and it is this "catch" which ostensibly offers the Raynards the justification they need to support the discriminatory treatment they propose in their plan. As already discussed, the joint filing of both spouses negates the problem presented by *Harris* and *Fetter*. However, MICH. COMP. LAWS § 600.5451(1)(o) puts the problem right back in the spotlight. The Raynards, by claiming their residence and farm as exempt pursuant to this section, could legitimately argue that MICH. COMP. LAWS § 600.5451(1)(o) still leaves them their farm and residence at risk to joint creditors' claims notwithstanding the successful completion of their Chapter 13 and that therefore preferred treatment of their joint creditors as part of their Chapter 13 is appropriate.[26]

▮▮▮▮ However, the Raynards' concern is valid only if MICH. COMP. LAWS § 600.5451(1)(o) is constitutional and I conclude that it is not. The only logical interpretation of MICH. COMP. LAWS § 600.5451(1)(o) is that it exempts all interests in property owned by the debtor as

---

**24.** A debtor in bankruptcy under the bankruptcy code, 11 USC 101 to 1330, may exempt from property of the estate property that is exempt under federal law or, under 11 USC 522(b)(2), the following property:

> \* \* \* \* \* \*

MICH. COMP. LAWS § 600.5451(1).
These exemptions are separate from whatever exemptions Michigan has offered and continues to offer to debtors whose property is subject to execution by a judgment creditor. *See,* MICH. COMP. LAWS § 600.6023.

**25.** The Raynards did not specifically claim this exemption although it clearly was available to them under Section 522(b)(1). However, the question before me is whether Mr. and Mrs. Raynard can justify the discrimination proposed in their April 25 amended plan, not whether they are allowed an exemption under MICH. COMP. LAWS § 600.5451(1)(o). Therefore, it is appropriate to address this exemption even though it has not been

claimed by the Raynards because subsection (1)(o) does offer a separate justification for the Raynards' proposed discrimination.

**26.** A joint petition protects a husband and wife from joint creditors proceeding against them personally because both spouses will presumably receive a discharge of all of their obligations, including their joint obligations, upon completion of their plan. 11 U.S.C. §§ 524(a) and 1328. However, the Section 524(a) discharge relates only to the personal liability of the debtor. Section 522(c) provides separate protection for the property the debtor has claimed as exempt. Specifically, Section 522(c) provides generally that property successfully claimed by the debtor as exempt under 522(b) "is not liable during or after the case for any debt of the debtor that arose ... before the commencement of the case." MICH. COMP. LAWS § 600.5451(1)(o) poses a problem because it appears to except joint creditors from the protection of Section 522(c).

entireties property regardless of whether the debtor files for bankruptcy relief individually or jointly with his or her spouse but that the interest, once exempted, remains subject to execution by a pre-petition creditor if that creditor has a joint claim against both spouses.[27] However, Section 522(c) clearly provides that property claimed as exempt under Section 522(b), which would include the MICH. COMP. LAWS § 600.5451(1)(o) exemption, is not liable for any pre-petition debt. Therefore, MICH. COMP. LAWS § 600.5451(1)(o) must be declared unconstitutional under the Supremacy Clause because it conflicts with Section 522(c).[28]

## IV. CONCLUSION

The Raynards' Chapter 13 plan, as currently amended, cannot be confirmed because it unfairly discriminates in favor of their joint unsecured creditors and to the detriment of their individual unsecured creditors. The Raynards' justification for the discrimination they propose is based upon the false premise that the non-exempt portion of their entireties interests claimed as exempt under Section 522(b)(2)(B) would be administered by a Chapter 7 trustee for the benefit of only the Raynards' joint creditors. However, for the reasons given, I conclude that the non-exempt portion is to be administered for all unsecured creditors, both joint and individual. In addition, I conclude that there is no other reason for the Raynards to prefer joint creditors over individual creditors in their plan. Therefore, confirmation of their Chapter 13 plan, as currently amended, is denied.

July 19, 2005 is the hearing date now set for confirmation of the Raynards' Chapter 13 plan. I am adjourning that hearing

---

27. The alternative interpretation of MICH. COMP. LAWS § 600.5451(1)(o) is that it permits the exemption of entireties interests only to the extent the interests are not subject to joint claims in much the same manner as entireties interests may be exempted under Section 522(b)(2)(B). Of course, such an interpretation begs the question as to why the Michigan legislature included this subsection if it merely duplicates the exemption already provided by Section 522(b)(2)(B). Moreover, this alternative interpretation makes sense only if the exemption is in reference to the property interest claimed as exempt. However, the exemption in MICH. COMP. LAWS § 600.5451(1)(o) clearly focuses on the claim itself. In other words, an interest in entireties property is to be exempt from the bankruptcy estate's property under MICH. COMP. LAWS § 600.5451(1)(o) regardless of whether it is subject to joint claims or not. Unlike Section 522(b)(2)(B), there is no issue under MICH. COMP. LAWS § 600.5451(1)(o) as to how the non-exempt portion of the entireties interest is to be administered because no interest remains with the bankruptcy estate even if a joint creditor exists. A joint creditor's protection under MICH. COMP. LAWS § 600.5451(1)(o) lies not with the bankruptcy trustee's administration of a special estate for its benefit but instead with its own ability to proceed post-petition against the property now exempted from the bankruptcy estate.

28. Generally, the unconstitutionality of one provision of a statute does not also render the remaining provisions of the statute invalid unless the remaining provisions are so related to the unconstitutional provision that the intent of the legislation would be thwarted were the remaining provisions to stand. *Baldwin v. North Shore Estates Assn.*, 384 Mich. 42, 54, 179 N.W.2d 398 (1970); *Klatt v. Durfee*, 159 Mich. 203, 205, 123 N.W. 542 (1909); *Pletz v. Sec'y of State*, 125 Mich.App. 335, 375, 336 N.W.2d 789 (1983). In this instance, I conclude that the Michigan legislature would not have included the exemption of entireties property under MICH. COMP. LAWS § 600.5451(1)(o) without the accompanying exception for joint claims against the debtor and his spouse. Therefore, all of subsection(1)(o) must be declared invalid. However, I further conclude that the remainder of MICH. COMP. LAWS § 600.5451 is sufficiently severable from subsection (1)(o) that no other provisions need also be declared invalid because of the unconstitutionality of subsection (1)(o).

until **August 30, 2005** to give the Raynards the opportunity to amend their plan so that it is consistent with this decision. No further adjournment of the confirmation hearing will be permitted unless for cause shown.

I would also observe that there is an open question regarding the amount the Raynards must contribute to their Chapter 13 plan to account for the non-exempt portion of the entireties property claimed as exempt under Section 522(b)(2)(B). The visceral response is $25,000, that being the amount the Raynards currently estimate as the amount owed to claimants to whom they are jointly indebted. However, the Bankruptcy Code, the Bankruptcy Rules, and the case law are all clear that Mr. and Mrs. Raynard each has a separate bankruptcy estate and that each is to claim his or her exemptions from the appropriate estate. 11 U.S.C. § 302(b) and Fed.R.Bankr.P. 1015. *See also, In re Chandler,* 148 B.R. 13, 15, (Bankr. E.D.N.C.1992); *In re Masterson,* 55 B.R. 648 (Bankr.W.D.Pa.1985). Therefore, the non-exempt portion of their Section 522(b)(2)(B) exemptions must be evaluated from the perspective that there are two bankruptcy estates, not one. The consequence is that each spouse's separate interest in the entireties property must be reduced by the amount owed jointly with the other spouse and, therefore, the amount that both must contribute in conjunction with their joint plan is twice that amount. For example, if the amount of joint claims owed by Mr. and Mrs. Raynard is in fact $25,000, then it is $50,000 that must be used for determining the portion of their entireties property that may not be claimed as exempt pursuant to Section 522(b)(2)(B). The Raynards would then be able to deduct from that amount $7,000 because of the $3,500 homestead exemption[29] that Michigan provides to each of them even against their joint creditors. *In re Trickett,* 14 B.R. at 89.

The recently enacted state bankruptcy exemptions also permit each debtor a $30,000 exemption in their homestead. MICH. COMP. LAWS § 600.5451(1)(n). However, this exemption may not be used in connection with calculating the Section 522(b)(2)(B) exemption because this exemption is available for purposes of a bankruptcy proceeding but not for purposes of exempting the homestead from process. Nonetheless, the Raynards may still attempt to rely upon MICH. COMP. LAWS § 600.5451(1)(n) to exempt whatever remaining entireties interest they are not able to exempt under Section 522(b)(2)(B) because of their joint creditors. In other words, the Raynards could assert that all but $50,000 of their equity in the farm and residence is exempt pursuant to Section 522(b)(2)(B) and that this $50,000 is also exempt pursuant to Section 522(b)(2)(A) and MICH. COMP. LAWS § 600.5451(1)(n). Therefore, whether the rest of MICH. COMP. LAWS § 600.5451 is constitutional or not might ultimately have to be decided in this case.

The Honorable Robert E. Grant has offered a thoughtful analysis of the constitutional implications of "bankruptcy specific" state exemptions in *In re Cross,* 255 B.R. 25 (Bankr.N.D.Ind.2000). Indiana had enacted an exemption that permitted a debtor to exempt his or her interest in entireties property if the other spouse did not also file for bankruptcy relief. However, the exemption was not available if both spouses filed for relief. Judge Grant denied the Chapter 7 trustee's constitutional challenge of this exemption based upon the trustee's contention that it interfered with Congress' ability to enact uniform bank-

---

**29.** Mich. Const. Art. X, Sec. 3; MICH. COMP. LAWS § 600.6023(1)(h).

ruptcy laws under Art. I. U.S. Const. Art. I, § 8, cl. 4. *Cross,* 255 B.R. at 30–31. However, Judge Grant concluded that the Indiana exemption did violate the Supremacy Clause, U.S. Const. Art. VI, cl. 2, by interfering with the scheme Congress had adopted as the proper balance between the competing interests of creditors and debtors in a bankruptcy proceeding. *Id.* at 31–36. Specifically, Judge Grant concluded that the Supremacy Clause precludes states from enacting exemptions which apply only when the debtor seeks bankruptcy relief.

*Cross* makes a compelling case for declaring MICH. COMP. LAWS § 600.5451 unconstitutional *in toto.* However, I am not making such a determination at this time because the issue is not squarely before me.

The Raynards now have until **August 30, 2005** to confirm their plan. If they choose to increase their contribution to account for the non-exempt portions of their entireties interests under Section 522(b)(2)(B) consistent with my decision herein, then I would expect that amended plan will be confirmed on that date provided that they are otherwise able to meet the confirmation standards of Section 1325, including plan feasibility. However, if the Raynards, for example, choose to calculate their Section 522(b)(2)(B) exemption as requiring consideration of their joint creditors only once in reference to their combined estates as opposed to twice in reference to their separate estates, or if they choose to rely upon MICH. COMP. LAWS § 600.5451(n) to exempt whatever they are not able to exempt under Section 522(b)(2)(B), then they should make the appropriate amendments to their plan

and/or Schedule C [30] so that the same can also be considered as part of the confirmation process. The Raynards would also be well advised to file a brief in support of any plan provision which would be inconsistent with this opinion so that I may give due consideration to their position before I make my final determination at the August 30, 2005 hearing.

---

30. A debtor claims his exemptions by listing the same in Schedule C to the schedules he is required to file in connection with his bankruptcy proceeding. Fed.R.Bankr.P. 4003(a).

The debtor amends his claimed exemptions by also amending Schedule C. Fed.R.Bankr.P. 4003(b).